25CA1316 McLain v Colorado Springs 07-30-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1316
El Paso County District Court No. 24CV31520
Honorable Gregory R. Werner, Judge

John McLain; Melissa Harte; and Protect Mountain Shadows, a nonprofit
corporation,

Plaintiffs-Appellants,

v.

City of Colorado Springs, a home rule City and Colorado municipal corporation,
acting through the city council of the City of Colorado Springs,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE MOULTRIE
Grove and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 30, 2026

Katherine Gayle, Colorado Springs, Colorado, for Plaintiffs-Appellants

Marc Smith, Acting City Attorney, W. Erik Lamphere, Division Chief, Colorado
Springs, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Plaintiffs, John McLain; Melissa Harte; and Protect Mountain Shadows, a nonprofit corporation, appeal the district court's judgment affirming the decision of defendant, the Colorado Springs City Council (City Council), to approve a rezoning application and associated development plan. We affirm.

## I.     Background

¶ 2     Arrowswest Apartment I, LLC (Arrowswest), owns approximately 9.5 acres of land (the property) near the intersection of North 30th Street and West Garden of the Gods Road (the intersection) in Colorado Springs. Nearly three-quarters of the property was zoned as a business park, while the remaining portion was zoned for "medium scale" mixed use. Arrowswest submitted an application to the Colorado Springs Planning Commission (Planning Commission) requesting that the entire property be rezoned for mixed use so that Arrowswest could build a 222-unit multifamily apartment complex at the southwest corner of the intersection (the project).

¶ 3     The Planning Commission held a hearing in April 2024 and found that the rezoning request complied with the applicable

rezoning criteria and conditionally found[1] that the project complied with the criteria for a development plan.[2]  The Planning Commission recommended that City Council approve Arrowswest's application.

¶ 4     A public hearing on Arrowswest's application was set for June 2024, but it was rescheduled after confusion arose during the hearing regarding whether the property was within a hillside overlay zone.[3]  Kevin Walker, the interim director of planning and neighborhood services, explained to City Council that the "hillside overlay" applies to locations in Colorado Springs with vegetation and slope that would be impacted by property development and,

---

[1] The Planning Commission's recommendation was conditioned on Arrowswest providing certain additional information.  The additional information requested is irrelevant to our analysis.

[2] Section 7.5.515(A) of the Unified Development Code of the City of Colorado Springs says that the purpose of a development plan is to "evaluate the specific impacts of the proposed land use and site design on the adjacent properties, neighborhood, schools, parks, road systems, and existing and planned infrastructure to ensure that proposed development is appropriate at a particular location."

[3] An "overlay" zone or district imposes "independent or supplemental restrictions or controls on land use and development within the area designated for the classification or allow[s] a use or activity in the designated area that would otherwise be prohibited." 1 Arden H. Rathkopf, Daren A. Rathkopf & Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning* § 10:3, Westlaw (4th ed. database updated May 2026).

thus, require "extra sensitivity and care" with respect to "visibility, access, and a variety of other criteria."

¶ 5     Walker told City Council that he didn't believe the property was zoned with a hillside overlay, but certain ordinances and zoning maps created confusion about its status. City Council postponed the hearing to allow Walker the opportunity to research the issue and present his findings at a future hearing.

¶ 6     At the second public hearing, Walker presented information to City Council about various zoning actions beginning in 1980 that had impacted the property's zoning classification. Ultimately, Walker concluded that the property was excluded from the hillside overlay zone by a 1989 ordinance. He explained that the property had been graded, so "it no longer exhibited any of the hillside characteristics." The city attorney agreed with Walker's analysis.

¶ 7     City Council also heard from supporters of the project, including the director of government affairs for the local chamber of commerce and representatives from two nonprofits that focus on affordable housing; the city's fire marshal, who provided information about local fire districts' improved ability to be responsive to potential wildfire events; and numerous citizens who

3

opposed the project. At the end of the hearing, City Council approved Arrowswest's application.

## II. Procedural Background

¶ 8 Plaintiffs filed a complaint under C.R.C.P. 106(a)(4) challenging City Council's approval of the application. They argued that City Council abused its discretion by violating a provision in the city's municipal code that says a rezoning decision "will not be detrimental to the public interest, health, safety, convenience, or general welfare," Colo. Springs City Code § 7.5.704(D)(2), and by violating the hillside overlay.

¶ 9 The complaint also included a request for a declaratory judgment under C.R.C.P. 57. In support of the declaratory judgment claim, plaintiffs alleged that the application review process had the appearance of impropriety and was affected by conflicts of interest because four of the councilmembers who voted to approve the application had each received a $2,500 campaign contribution from Arrowswest. Plaintiffs therefore requested a declaratory judgment stating that City Council's approval of Arrowswest's application was "contrary to and in violation of" certain ethics-related sections of the Colorado Springs City Code

(city code) and requiring councilmembers to abide by their obligations under those sections when considering future development applications from Arrowswest.

¶ 10 The district court dismissed plaintiffs' Rule 106(a)(4) complaint. The court explained that plaintiffs misunderstood the standard of review because if any competent evidence existed in the record to support City Council's decision, the court was required to affirm it — even if plaintiffs had presented conflicting evidence based on legitimate concerns. The court concluded that, reviewing the record as a whole, there was competent evidence to support City Council's decision. With respect to whether City Council had a conflict of interest, the court concluded that plaintiffs had "failed to overcome the presumption of integrity, honesty and impartiality" as set forth in *Soon Yee Scott v. City of Englewood*, 672 P.2d 225 (Colo. App. 1983).

¶ 11 About a month after the district court's ruling, plaintiffs filed their notice of appeal in this court. And a month after that, they filed a motion in the district court seeking clarification of whether the court had actually ruled on their request for declaratory judgment.

¶ 12    In September 2025, this court issued a briefing schedule, but plaintiffs didn't file their opening brief by the deadline.  As a result, we issued a show cause order requiring plaintiffs to explain why their appeal shouldn't be dismissed for their failure to file an opening brief.  Plaintiffs' counsel responded and explained that she (1) believed the pending motion for clarification required a ruling before appellate jurisdiction vested; (2) was undergoing medical treatment the week before the briefing schedule was issued, which adversely affected her such that her ability to work and monitor electronic filing notices was limited; and (3) missed the electronic filing notice from this court, so she wasn't aware of the opening brief deadline until she received the show cause order.  The show cause order was deferred to the merits division, and the parties were ordered to submit their respective briefs.

### III.    The Show Cause Order is Discharged

¶ 13    Counsel's (incorrect) belief that appellate jurisdiction hadn't fully vested because a ruling remained pending on the motion for clarification isn't good cause for missing the filing deadline.  And we note that, despite counsel's assertion that she didn't receive the briefing schedule, the service history shows that she received and

6

read the notice of briefing schedule one week after this court issued it. Nevertheless, we accept her representation that ongoing medical treatments prevented her from being able to attend to work obligations and conclude that her resulting neglect in missing the briefing deadline was excusable. We therefore find good cause to accept plaintiffs' opening brief and discharge the show cause order.[4] *See* C.A.R. 26(c); *see also Farm Deals, LLLP v. State*, 2012 COA 6, ¶ 20 (for a court to grant a "good cause" extension under C.A.R. 26(c), "a party must establish that its failure to meet the applicable deadline was due to 'excusable neglect'" (citation omitted)); *Guevara v. Foxhoven*, 928 P.2d 793, 795 (Colo. App. 1996) ("excusable neglect" exists "when surrounding circumstances would cause a reasonably prudent person similarly to overlook a required act in the performance of some responsibility").

¶ 14     We now turn to the merits of the appeal.

---

[4] We note that City Council doesn't allege any prejudice from our acceptance of plaintiffs' opening brief under an extended filing deadline.

7

## IV.    Applicable Legal Principles

### A.    Rule 106(a)(4) and Rezoning Decisions

¶ 15    A party alleging that a governmental body exceeded its jurisdiction or abused its discretion in exercising its quasi-judicial decision-making authority may seek judicial review under Rule 106(a)(4).  *See* C.R.C.P. 106(a)(4)(I); *Rangeview, LLC v. City of Aurora*, 2016 COA 108, ¶ 15; *see also Whitelaw v. Denv. City Council*, 2017 COA 47, ¶ 8 (a city council's decision to rezone property is a quasi-judicial decision).

¶ 16    We are in the same position as the district court when reviewing City Council's decision.  *See Whitelaw*, ¶ 8.  We thus review the decision of the administrative body itself, not that of the district court.  *Roybal v. City & County of Denver*, 2019 COA 8, ¶ 9; *Ross v. Fire & Police Pension Ass'n*, 713 P.2d 1304, 1309 (Colo. 1986) ("[T]he appropriate consideration for an appellate court [in a C.R.C.P. 106(a)(4) action] is whether there is sufficient evidentiary support in the record for the decision of the administrative tribunal, and not whether there is an adequate source of evidence to support the decision of the district court.").  We, like the district court, have no factfinding authority in Rule 106(a)(4) actions; rather, our review

8

is limited to whether City Council exceeded its authority or abused its discretion based upon the evidence in the record before it. *See Rangeview, LLC*, ¶ 15; C.R.C.P. 106(a)(4)(I).

¶ 17 A city council abuses its discretion when its decision isn't supported by any competent evidence in the record. *Rangeview, LLC*, ¶ 16. "No competent evidence" means that a city council's decision was "so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Id.* (quoting *Ross*, 713 P.2d at 1309). When conducting our review, we don't sit as a zoning board of appeals, won't reweigh the evidence, and must accept the weight given to conflicting evidence by the city council. *Bd. of Cnty. Comm'rs v. O'Dell*, 920 P.2d 48, 50-51 (Colo. 1996).

## B. Rule 57

¶ 18 A party may seek, and a district court may issue, a declaratory judgment that affords the party with "'relief from uncertainty and insecurity' with respect to rights, status, and other legal relations." *Nash v. Mikesell*, 2024 COA 68, ¶ 50 (quoting *Citizens Progressive All. v. Sw. Water Conservation Dist.*, 97 P.3d 308, 310 (Colo. App. 2004)); *see* C.R.C.P. 57(a).

## V.    Analysis

### A.    City Council Didn't Abuse Its Discretion when It Approved Arrowswest's Rezoning Request and Development Plan

¶ 19    Raising arguments similar to those they raised in district court, plaintiffs assert that City Council's rezoning decision is contrary to public safety and isn't supported by competent evidence.  In so arguing, they point to a 2021 City Council decision that denied, for public safety reasons, a rezoning request by a different developer to build an apartment complex near the intersection.  Plaintiffs argue that City Council's approval of Arrowswest's application despite its previous denial of a different development near the intersection is arbitrary and capricious.  They assert that City Council's approval was based on testimony that was "internally inconsistent, uniformly contradicted by other expert evidence, and relied solely on Zonehaven" — an emergency response system that, as relevant here, alerts people of the need to evacuate in a wildfire situation.  Plaintiffs argue that the city's use of Zonehaven was City Council's "only justification . . . to upend [its] prior decision at [the] intersection."  They thus assert that City Council's decision to discontinue its use of Zonehaven within

months of its approval of Arrowswest's application demonstrates that its approval of the application was arbitrary.

¶ 20 We agree with the district court that plaintiffs appear to misunderstand the narrow role of judicial review under Rule 106(a)(4). It appears that plaintiffs are asking us to reweigh the evidence. But we don't have that authority. *See O'Dell*, 920 P.2d at 50-51. And while we acknowledge that the record reflects that there was conflicting evidence, we must accept City Council's resolution of the conflicts if its decision is supported by competent evidence. *See id.*

¶ 21 It's undisputed that City Council received conflicting evidence at the second public hearing. People opposed to the project told City Council how they believed the project was detrimental to public safety. They primarily relied on traffic congestion at the intersection during the 2012 Waldo Canyon fire and City Council's denial of a different rezoning application in 2021.

¶ 22 City Council also heard from an Arrowswest representative, who explained that the company had conducted two traffic studies that indicated the project would have a negligible impact on traffic. Specifically, traffic experts estimated that the project would

generate about half the traffic volume of the property's current industrial zoning, which could generate up to 3,000 vehicles per day. The Arrowswest representative also said that they had met with the fire department and that fire officials confirmed the project complied with required standards without objection.

¶ 23 Furthermore, the fire marshal described to City Council the city's firefighting infrastructure and system changes implemented after the Waldo Canyon wildfire. The fire marshal and a councilmember had the following exchange:

> [Councilmember]: Do we change zoning and put a large apartment complex at a chokepoint, at [the] intersection? Increased density, buildings near each other, bigger buildings, can that contribute to fire spread with higher temperatures and just the proximity of structures?
>
> [Fire marshal]: It absolutely can. But in the instance of this complex, I would say it will not.

¶ 24 In their opening brief — in passing and without citation to legal authority — plaintiffs argue that it's necessary for this court "to restore the doctrinal integrity of Rule 106(a)(4) review and to clarify the limits of judicial deference where public safety is at stake." And plaintiffs cite *Eason v. Board of County Commissioners*,

70 P.3d 600, 610 (Colo. App. 2003), in their reply brief for the proposition that "when [a] decision upends a previous decision made by the same body pertaining to the same site[,] the decision is not entitled to deference and can be set aside upon C.R.C.P. 106(a)(4) review."[5]  But *Eason* involved a singular business owner who applied for, and received, a permit to operate his business under one interpretation of the applicable zoning regulations.  *Id.* at 603.  The business owner was thereafter stripped of the permit by the local government body based on the government's "reinterpretation" of the applicable zoning regulations.  *Id.*  A division of this court concluded that, because the business owner had a vested property interest based on the government's original interpretation of the zoning regulations but didn't receive due process before the government stripped him of that interest, the government body's decision wasn't due deference.  *See id.* at 610.

---

[5] We exercise our discretion to address plaintiffs' underdeveloped deference argument because City Council addressed the same in its answer brief and addressed the applicability of *Eason v. Board of County Commissioners*, 70 P.3d 600 (Colo. App. 2003), specifically, during oral argument.  *Cf. In re Marriage of Dean*, 2017 COA 51, ¶ 31 (appellate court need not consider arguments raised for the first time in a reply brief or those that seek to expand upon contentions the party raised in their opening brief).

*Eason* thus doesn't stand for the broad holding that plaintiffs assert.

¶ 25    Here, it's undisputed that the two developments were at different locations and proposed by different developers. Arrowswest proposed to build the project at the southwest corner of the intersection, whereas the other developer's proposed development would have been located directly west of the intersection. Plaintiffs don't cite any authority that says a city council is bound by its previous rezoning decisions for different properties, nor are we aware of any.

¶ 26    Moreover, plaintiffs disregard the fact that the previous proposed development was almost twice the size of Arrowswest's project. Plaintiffs suggest that because a division of this court upheld City Council's denial of the other developer's rezoning request, it means that any residential development built at the intersection would be detrimental to public safety. We aren't persuaded.

¶ 27    In *2424GOTG, LLC v. City of Colorado Springs*, (Colo. App. No. 22CA1145, July 13, 2023) (not published pursuant to C.A.R. 35(e)), a division of this court affirmed City Council's 2021 denial of the

other developer's rezoning request. The division concluded that the evidence in the record of that case supported City Council's denial of the developer's request on the basis that rezoning would be detrimental to public safety because of evacuation concerns. *See Id.*, slip. op. at ¶¶ 34-39.

¶ 28    But in this case, City Council determined the project *wasn't* a detriment to public safety, and it received evidence to support its decision — namely, Arrowswest's traffic studies,[6] the fire marshal's opinion, and information that the project supported the city's goal of infill development and reduced its housing market deficit. And, as plaintiffs note, "[City] Council's obligation under the [city] code is to evaluate the merits of each project."

¶ 29    Because competent evidence in the record before City Council in this case supports its decision, we can't conclude that City Council abused its discretion when it approved Arrowswest's application. *See Rangeview, LLC,* ¶ 16; *O'Dell*, 920 P.2d at 50; *see also Sundance Hills Homeowners Ass'n v. Bd. of Cnty. Comm'rs*, 534

---

[6] One traffic study showed that, unlike in *2424GOTG, LLC v. City of Colorado Springs*, (Colo. App. No. 22CA1145, July 13, 2023) (not published pursuant to C.A.R. 35(e)), traffic would exit directly onto Garden of the Gods Road rather than 30th Street.

P.2d 1212, 1215-16 (Colo. 1975) (a reviewing court may not substitute its judgment for that of the city council).

¶ 30 Furthermore, we decline to consider plaintiffs' argument that the city's discontinued use of Zonehaven shows that City Council's decision was arbitrary because, logically, City Council's decision couldn't have been based on an action that hadn't yet occurred. Thus, that information wasn't in City Council's record, so we can't consider it. *See Rangeview, LLC*, ¶ 15; C.R.C.P. 106(a)(4)(I).

## B. Plaintiffs' Estoppel and Laches Arguments Are Undeveloped

¶ 31 Plaintiffs next argue that the doctrines of estoppel and laches prevent the city's removal of the hillside overlay from the property. City Council asserts that plaintiffs' arguments were undeveloped in the district court, so we shouldn't address them for the first time on appeal.[7] We agree with City Council.

---

[7] City Council cited an unpublished opinion from this court in support of its argument. Absent exceptions inapplicable here, this court's policy prohibits citations to our opinions that aren't selected for official publication. Colo. Jud. Branch, *Court of Appeals Policies, Policy Concerning Citation of Opinions Not Selected for Official Publication* (2026), https://perma.cc/ZQW2-H29D. We trust counsel will adhere to this policy in the future.

¶ 32　　In one paragraph in their district court opening brief, plaintiffs asserted that the doctrines of estoppel and laches should apply because they and other property owners relied on the hillside overlay restrictions and encumbrances for thirty-five years, so it wouldn't be fair to suddenly remove that restriction from the property.  But plaintiffs presented this argument to the district court in a conclusory manner without any citation to authority. *See Gravina Siding & Windows Co. v. Gravina*, 2022 COA 50, ¶ 71 (it's not a court's "proper function to make or develop a party's argument when that party has not endeavored to do so itself" (citation omitted)); *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) (parties "must inform the court both as to the specific errors asserted and the grounds, supporting facts, and authorities to support their contentions").

¶ 33　　Although plaintiffs attempt to supplement their estoppel and laches arguments on appeal, they didn't adequately develop their arguments in the district court.  *See Marquez v. Schaefer*, 2025 COA 44, ¶ 30 ("To properly preserve an argument for appeal, a party must present 'the sum and substance of the argument' to the district court." (citation omitted)).  And plaintiffs conceded during

17

oral argument that they didn't develop these arguments in the district court. We thus decline to further consider plaintiffs' estoppel and laches arguments. *See id.* at ¶¶ 51, 54.

### C. The District Court Impliedly Denied Plaintiffs' Request for Declaratory Judgment Under Rule 57

¶ 34 Plaintiffs assert that the district court didn't address their request for declaratory judgment. They argue that because the district court didn't address this claim, under C.R.C.P. 54(b), the judgment is incomplete and "prevent[s] proper appellate review."

¶ 35 We note that if we accepted plaintiffs' assertion that the judgment here is incomplete, we would have to dismiss their appeal. *See* C.R.C.P. 54(b); *see also Musick v. Woznicki*, 136 P.3d 244, 250 (Colo. 2006) ("[A]bsent correct C.R.C.P. 54(b) certification, 'litigation involving multiple claims . . . is not final and appealable until all of the issues in the litigation are adjudicated.'" (citation omitted)). However, as we explain next, we disagree that plaintiffs' claims weren't fully resolved.

¶ 36 The court noted that there was no record evidence about the total campaign contributions that each of the four councilmembers received, which was important because "not 'every campaign

18

contribution by a litigant or attorney creates a probability of bias that requires . . . a recusal.'" *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009). The court thus found there was no basis to conclude that the councilmembers who received campaign contributions were improperly influenced by them.

¶ 37 Furthermore, the court noted that the city code encourages councilmembers whose actions may cause an appearance of impropriety to disclose and recuse or disclose and declare impartiality but doesn't *require* either disclosure or recusal. And city code section 1.3.111(B)(1) expressly states that "no violation of this Code of Ethics shall be found to apply to . . . [a] campaign contribution as defined by law." Ultimately, the court concluded that plaintiffs "failed to overcome the presumption of integrity, honesty, and impartiality." The district court thus impliedly denied plaintiffs' Rule 57 claim.[8] *See Pacitto v. Prignano*, 2017 COA 101,

---

[8] Because we conclude that the district court addressed — and rejected — plaintiffs' declaratory judgment claim, we don't address City Council's arguments that plaintiffs "abandoned, waived, and forfeited" the claim or that plaintiffs lacked standing to assert this claim.

¶ 5 (the district court's ruling "impliedly rejected" the party's declaratory judgment claim).

¶ 38 Because plaintiffs assert only that the district court didn't address their declaratory judgment claim, and don't ask us to review the propriety of the district court's resolution of the merits of it, we need not address it further.

## VI. Disposition

¶ 39 The judgment is affirmed.

JUDGE GROVE and JUDGE BERNARD concur.